J-A07045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFF RUSSELL ROTZ | : | |
| | : | |
| Appellant | : | No. 1265 MDA 2023 |

Appeal from the PCRA Order Entered August 24, 2023
In the Court of Common Pleas of Fulton County Criminal Division at
No(s): CP-29-CR-0000135-2020

BEFORE:   STABILE, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:   **FILED: APRIL 23, 2024**

Appellant Jeff Russell Rotz appeals the order of the Court of Common Pleas of Fulton County denying Appellant's petition pursuant to the Post Conviction Relief Act (PCRA).[1]  Appellant claims trial counsel was ineffective in providing the prosecution with a polygraph examination report prepared by the defense revealing that Appellant had made inculpatory statements. In addition, Appellant argues trial counsel failed to properly obtain his informed consent to share this polygraph with the prosecution or to protect Appellant from any resulting harm from the disclosure. After a careful review, we affirm.

In the early morning hours of August 15, 2020, at approximately 3:30 a.m., seventeen-year-old I.F. contacted the police to report a sexual assault.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

Notes of Testimony (N.T.), Trial, 5/6/22, at 32, 82.  Officers encountered I.F. barefoot waiting in the bushes outside Appellant's home, where I.F. had been staying overnight with her friend, who was the daughter of Appellant's girlfriend.  N.T. Trial at 32. When I.F. sat in the back of the patrol vehicle, she gave a recorded statement indicating that Appellant had digitally penetrated her and forcibly performed oral sex on her. N.T. Trial at 36-40. After I.F. was transported to a local hospital, she recounted these allegations to Trooper Craig Strait and sexual assault nurse examiner (SANE) Dana Kip, who gave I.F. a rape kit examination. N.T. Trial at 40, 56, 63-70, 83.

That same morning, troopers brought Appellant to the state police barracks where he voluntarily submitted to an interview and was read his **Miranda**[2] rights. N.T. Trial at 84-85. In this initial interview which occurred at approximately 6:10 a.m., Appellant indicated that he "didn't know what [I.F.] was talking about" when Trooper Strait presented him with I.F.'s allegations. N.T. Trial at 86. Appellant stated that, earlier in the evening, he was swimming in the pool with I.F. and his girlfriend's daughter, who both were drinking alcoholic beverages. N.T. Trial at 87. Appellant alleged that I.F. was being "frisky" and "advanced" toward him, such that it "seemed like [I.F] wanted something from him." N.T. Trial at 86. Appellant claimed that later that evening, I.F. touched her vagina in front of Appellant while lying in bed. N.T. Trial 86-87. Appellant denied having any sexual contact with I.F. and said

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

that if I.F. had reported that they had sexual contact, I.F. was jealous and lying. N.T. Trial at 87.

Trooper Strait informed Appellant that he was going to prepare a criminal complaint of charges against him while Appellant would be processed, fingerprinted, and photographed. N.T. Trial at 88. Thereafter, Appellant told officers that he wished to speak to Trooper Strait again. N.T. Trial at 88.

In the second interview which occurred at approximately 8:17 a.m., Appellant admitted that he had consensual sexual contact with I.F. after she touched herself in Appellant's presence and allowed Appellant to engage in digital penetration. N.T. Trial at 88-89. When Trooper Strait asked Appellant if he performed oral sex on I.F., he replied, "no, not that he could remember." N.T. Trial at 89. He admitted that he told I.F. to not tell anyone about their encounter. N.T. Trial at 89. Appellant indicated that "this time … he was telling the truth." N.T. Trial at 90.

On August 24, 2020, Appellant submitted to a private polygraph examination which had been arranged by Craig Kauzlarich, Esq. ("trial counsel"). In the pre-test interview, Appellant admitted to performing both digital penetration and oral sex on I.F.; however, he asserted that such sexual contact was consensual. The polygraph results were documented in a report prepared by Patrick Kelly, who indicated that Appellant's responses to the polygraph were "not indicative of deception." Polygraph Examination Report, at 1-3.

At Appellant's arraignment, trial counsel provided the prosecution with the results of the polygraph to highlight that Appellant did not show responses indicative of deception when he claimed that his sexual encounter with I.F. was consensual. Appellant was initially charged with aggravated indecent assault - forcible compulsion (F2), aggravated indecent assault – lack of consent (F2), corruption of minors (F3), indecent assault - forcible compulsion (M1), and indecent assault – lack of consent (M1).

On December 21, 2020, the Commonwealth filed a motion to amend the criminal information to add a charge of Involuntary Deviate Sexual Intercourse (IDSI) (F1). On February 9, 2021, after a hearing, the trial court granted the Commonwealth's motion to amend. On February 25, 2021, Appellant filed a motion for certification of an immediate appeal of the February 9, 2021 order. On March 3, 2021, the trial court amended its February 9, 2021 order to include the requisite certification language. On March 17, 2021, Appellant filed a notice of appeal. However, after Appellant filed an application to withdraw the appeal, the appeal was discontinued.

Thereafter, both the defense and Commonwealth filed various pretrial motions. In particular, Appellant filed a motion *in limine* to quash subpoena and preclude the Commonwealth from calling Patrick Kelly to testify about the polygraph he conducted with Appellant. On May 23, 2022, the trial court entered an order, which denied Appellant's motion to preclude Mr. Kelly from testifying "so long as the Commonwealth limits Mr. Kelly's testimony to rebuttal." Order, 5/23/22, at 1. The trial court further provided that "[a]ny

reference by either party to the polygraph examination performed on [Appellant] by Mr. Kelly is strictly prohibited and may result in a mistrial." Order, 5/23/22, at 1.

Appellant proceeded to a jury trial on May 26, 2022. The Commonwealth presented the testimony of I.F., Ms. Kip, and Trooper Strait. The prosecution also admitted the recording of I.F. giving troopers her account of the incident in question while seated in the back of the patrol vehicle after escaping from Appellant's home.

Appellant chose to testify on his own behalf and expressly admitted to having engaged in digital penetration and oral sex with I.F.; however, he asserted that all sexual contact was consensual. N.T. Trial, at 137, 139. On cross-examination, the prosecutor confronted Appellant with Trooper Strait's allegation that Appellant told police repeatedly that he did not have oral sex with I.F. N.T. Trial, at 139-40. Appellant indicated that he did not think that the topic of oral sex "was brought up" in the police interviews and asserted that Trooper Strait did not ask him whether he had oral sex with I.F. N.T. Trial, at 140-41.

The prosecutor then asked Appellant if he had admitted having oral sex with I.F. to "an investigator hired by the defense." N.T. Trial, at 141. Trial counsel objected to this line of questioning and asserted at side bar that the parties were not permitted to talk about the polygraph examination. The prosecutor indicated he was attempting to highlight the inconsistency between Appellant's statements to Trooper Strait in his interviews with his trial

testimony. The trial court overruled the objection and the following exchange occurred:

> [Prosecutor:] When did you first acknowledged [sic] having oral sex with [I.F.]?
>
> [Appellant:] I took a polygraph.

N.T. Trial, at 142.

After the defense requested to convene at side bar, the parties asked the trial court to strike Appellant's statement. The trial court agreed to strike the statement and instructed the jury to disregard any evidence of any polygraph. The cross-examination continued as follows:

> [Prosecutor:] Isn't it true that you first acknowledged performing oral sex on [I.F.] on or about August 24, 2020?
>
> [Appellant:] No, I have no idea what the date was.
>
> [Prosecutor:] It was weeks after or at least a week-and-a-half [after] you met with Trooper Strait; is that correct?
>
> [Appellant:] Yes.
>
> [Prosecutor:] At a different place to a different person.
>
> [Appellant:] Yes. A polygraph tester.

N.T. Trial, at 143.

At that point, the trial court again advised the jury to disregard Appellant's reference to the polygraph and directed Appellant to consult with his counsel for a moment at the defense table before resuming his testimony. The following exchange then occurred:

> [Prosecutor:] You first acknowledged having oral sex with [I.F.] on or about August 24, didn't you?

[Appellant:] Like I said, I don't know the correct date but that sounds close.

[Prosecutor:] Okay. A week-and-a-half or so after you had been interviewed repeatedly by Trooper Strait, correct?

[Appellant:] He interviewed me twice.

[Prosecutor:] And you never acknowledged having oral sex, performing oral sex on [I.F.] with Trooper Strait, did you?

[Appellant:] I think I better get an attorney. I told you enough.

[Trial Court:] Do you want to answer the question?[3]

[Appellant:] Say it again?

[Prosecutor:] You never acknowledged to Trooper Strait that you performed oral sex on [I.F.]?

[Appellant:] No, sir.

N.T. Trial, at 144 (footnote added).

At the conclusion of the trial, the jury convicted Appellant of aggravated indecent assault (forcible compulsion), corruption of minors, indecent assault (forcible compulsion), and IDSI. The trial court found Appellant not guilty on the charges of aggravated indecent assault (without complainant's consent) and indecent assault (without complainant's consent).

On August 26, 2022, the trial court imposed a term of 66-144 months' imprisonment on the IDSI charge along with concurrent terms of 36-120 months' imprisonment for aggravated indecent assault, 12-60 months' for corruption of minors, and 9-60 months' for indecent assault. On August 29,

---

[3] The Commonwealth claims that the transcript incorrectly attributes this line of questioning to the trial court, when it was the prosecutor who actually asked this question.

2022, Appellant filed a post-sentence motion, which the trial court subsequently denied. Appellant did not file a direct appeal.

On April 23, 2023, Appellant filed this timely PCRA petition, claiming that his trial counsel was ineffective in disclosing his polygraph report and results to the prosecution, which revealed Appellant's admission to having oral sex with I.F. Appellant claims that trial counsel failed to 1) properly research on whether such disclosure would be admissible, 2) adequately inform him of the potential harm from revealing the polygraph, and 3) take adequate steps to limit harm to Appellant from the disclosure.

At the PCRA hearing, Appellant presented the testimony of trial counsel who admitted that he mailed the polygraph results to Trooper Strait before any charges were filed to show the prosecution that Appellant "passed" a polygraph on the issue of consent. N.T. PCRA hr'g, 6/14/23, at 12, 39. Trial counsel indicated that he presented the polygraph results again to Trooper Strait at the arraignment. N.T. PCRA hr'g, at 12.

Trial counsel asserted it was a common defense tactic to have a defendant submit to a private polygraph exam which, if helpful to the defense, can be turned over to the Commonwealth to attempt to convince the prosecution to pursue mitigated charges against the defendant. N.T. PCRA hr'g, at 12. Trial counsel asserted that this strategic maneuver has been used by his firm in cases where there are charges of sexual offenses, there are no witnesses or physical evidence of a crime, the complainant is old enough to

allow the defendant to offer a consent defense, and the case ultimately is characterized as a "he said, she said" case. N.T. PCRA hr'g, at 38.

With respect to the instant case, trial counsel was aware that Appellant had given a statement to police admitting to digital penetration before he had retained counsel. N.T. PCRA hr'g, at 15. As such, trial counsel felt the only remaining defense to Appellant was to focus on his assertion that I.F. had consented to the sexual contact. N.T. PCRA hr'g, at 15. As Appellant had passed the polygraph on the issue of consent, trial counsel viewed that point to be beneficial to the defense. N.T. PCRA hr'g, at 17.

Trial counsel admitted the polygraph disclosure provided the prosecution with Appellant's admission to performing oral sex on I.F., which Appellant had denied in his interviews with police. N.T. PCRA hr'g, at 18. Although trial counsel testified that he informed Appellant about the disclosure tactic, he conceded that he did not discuss with Appellant that the incriminating statements made in the polygraph could be used against him. N.T. PCRA hr'g, at 22.

On August 24, 2023, the PCRA court entered an order denying Appellant's petition. This timely appeal followed. Appellant complied with the PCRA court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issue for our review:

Was trial counsel materially ineffective when (a) he disclosed the polygraph examination, which contained inculpatory and inconsistent statements [Appellant] had made; (b) before the

disclosure, [counsel] did not do adequate research and investigation; (c) before such disclosure, he did not adequately discuss the potential harm or obtain informed consent; and (d) before and after such disclosure, counsel did not take adequate steps to prevent such harm?

Appellant's Brief at 4.

In reviewing claims of ineffectiveness of counsel, we are guided by the

following principles:

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. ***See Commonwealth v. Pierce***, 515 Pa. 153, 527 A.2d 973, 975–76 (1987); ***Strickland v. Washington***, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The PCRA court may deny an ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs." ***Commonwealth v. Basemore***, 560 Pa. 258, 744 A.2d 717, 738 n.23 (2000).... Because courts must presume that counsel was effective, it is the petitioner's burden to prove otherwise. ***See Pierce***, ***supra***; ***Commonwealth v. Holloway***, 559 Pa. 258, 739 A.2d 1039, 1044 (1999).
>
> [***Commonwealth v. Natividad***, 595 Pa. 188, 207–08, 938 A.2d 310, 321 (2007);] ***see also Commonwealth v. Hall***, 582 Pa. 526, 537, 872 A.2d 1177, 1184 (2005) (stating an appellant's failure to satisfy any prong of the ***Pierce*** ineffectiveness test results in a failure to establish the arguable merit prong of the claim of ineffectiveness).

***Commonwealth v. Johnson***, 179 A.3d 1105, 1114 (Pa.Super. 2018).

With respect to the reasonable basis prong of the ineffectiveness test,

our courts have explained that:

- 10 -

[w]hen assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest....[T]his cannot be a hindsight evaluation of counsel's performance, but requires an examination of "whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect [the] defendant's interests." Our evaluation of counsel's performance is "highly deferential."

*Commonwealth v. Evans*, 303 A.3d 175, 183 (Pa.Super. 2023) (quoting *Commonwealth v. Williams*, 141 A.3d 440, 463 (Pa. 2016) (citations and quotations omitted)).

Turning to the instant case, we find no error in the PCRA court's determination that trial counsel had a reasonable basis for his decision to disclose the polygraph report to the Commonwealth. Trial counsel averred that he and his firm had successfully used the defense tactic of disclosing a favorable polygraph test to the prosecution on multiple occasions to substantially reduce potential sexual assault charges of other defendants. N.T. PCRA hr'g, at 38. Trial counsel also noted that this strategy would also relieve a criminal defendant of the pressure of taking a polygraph administered by the police.

In this case, trial counsel believed that Appellant's only available defense was to argue that I.F. consented to the sexual contact as Appellant had already admitted to the police that he engaged in digital penetration. Trial counsel presented the polygraph results to Trooper Strait before Appellant was formally charged in an attempt to convince the prosecution to either pursue

lesser charges or drop the charges altogether, arguing that the polygraph provided support for Appellant's defense that all sexual contact with I.F. was consensual.

Although Appellant admitted to having oral sex with I.F. in the polygraph interview, trial counsel explained that he viewed Appellant's polygraph results "on the whole to be beneficial" because Appellant had passed the polygraph on the key issue of consent. N.T. PCRA hr'g, at 17. As I.F. was seventeen years old and legally capable of consenting to sexual contact, trial counsel believed the polygraph results were "consistent with innocence." N.T. PCRA hr'g, at 17.

While Appellant argues that trial counsel should have invoked Pa.R.E. 410 to attempt to render statements in his polygraph interview to be inadmissible, this assertion is misplaced. Rule 410(a)(4) provides that "evidence of a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later withdrawn guilty plea" is not admissible "against the defendant who made the plea or participated in the plea discussions." Pa.R.E. 410(a)(4). The record contains no evidence the prosecution had offered or considered extending a plea agreement to Appellant.

Similarly, we are not persuaded by Appellant's assertion that trial counsel should have sought to obtain a stipulation from the Commonwealth that the prosecution would not use any information obtained from the polygraph. As there is no evidence in the record that the Commonwealth

would have even considered such a stipulation, we decline to speculate on this issue. We remind Appellant that we do not seek to determine whether "there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest." **Williams**, **supra**. We conclude that trial counsel established a reasonable basis for disclosing the polygraph results to the prosecution, that is, to advance Appellant's interests by attempting to mitigate the charges against him.

In addition, we agree that Appellant has not shown prejudice, such that "there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." **Commonwealth v. Koehler**, 36 A.3d 121, 132 (Pa. 2012). Although the polygraph revealed Appellant's admission to having oral sex with I.F., the prosecution had evidence to support an IDSI charge even without the polygraph results as I.F. testified at trial that Appellant had performed oral sex on her.

Further, while Appellant asserts that prejudice resulted when his credibility was damaged before the jury by the exchange with the prosecutor regarding the polygraph at trial, any prejudice resulted from Appellant's own insistence on referencing the polygraph at trial.

Appellant chose to testify at trial and admitted to having oral sex with I.F. On cross-examination, the prosecution attempted to clarify the timeline of Appellant's admissions by asking whether he had told investigating officers that he had oral sex with I.F. Appellant indicated that he did not think that the

topic of oral sex "was brought up" in the police interviews and asserted that Trooper Strait did not ask him whether he had oral sex with I.F. N.T. Trial, at 140-41.

As this statement conflicted with Trooper Strait's testimony that Appellant repeatedly told police that he did not have oral sex with I.F., the prosecutor continued with this line of questioning and carefully inquired if Appellant had admitted having oral sex with I.F. to "an investigator hired by the defense," making no attempt to reference the polygraph. The prosecutor was properly seeking to impeach Appellant's credibility with respect to his claim that the investigators had never questioned him about I.F.'s allegations that he engaged in oral sex.

After trial counsel unsuccessfully objected to the prosecutor's line of questioning, Appellant made two unsolicited references to his polygraph. Despite having the trial court strike his first statement regarding the polygraph and cautioning the jury to disregard Appellant's reference given the inherent inadmissibility of polygraphs, Appellant again brought up the fact that he had taken a polygraph. The trial court again struck Appellant's reference to the polygraph, issued a similar instruction to the jury, and directed Appellant to consult with his counsel so that he could understand why he should not reference the polygraph. As such, it was Appellant's actions, not trial counsel's, that introduced evidence of the polygraph into the trial.

Accordingly, we conclude the PCRA court did not err in dismissing Appellant's ineffectiveness claim since he failed to show that trial counsel's

action lacked a reasonable basis and/or he was prejudiced by trial counsel's action. Consequently, we affirm.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>04/23/2024</u>